**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:93-cr-00333-DAP |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| REGINALD K. WALKER, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

**I. Background**

Walker pled guilty to one count of conspiracy to distribute cocaine, and, on April 26, 1994, Judge Sam H. Bell sentenced Walker, in relevant part, to 360 months imprisonment for conspiracy to distribute cocain in violation of 21 U.S.C. §§ 841, 846. Minutes, Doc #: 98; J., Doc #: 100; *accord United States v. Walker*, 51 F.3d 274 (table), 1995 WL 141343, at *1–2, 1995 U.S. App. LEXIS 7556, at *1–7 (unreported) (6th Cir. 1995). Walker was sentenced "as a career offender with an offense level of 37 and a criminal history category of VI." *Walker*, 1995 WL 141343, at *2; *see* Gov't Opp. 1–2, Doc #: 228 ("Walker was determined to be a career offender under U.S.S.G. § 4B1.1 of the then-mandatory sentencing guidelines based on his two 1975 convictions for crimes of violence; to wit, aggravated assault and aggravated robbery. (PSR, p. 8). Accordingly, Walker was sentenced to a term of 360 months imprisonment."). In March

1995, the Sixth Circuit found no reversible error and affirmed. *Walker*, 1995 WL 141343, at *1.

On June 12, 1995, Walker filed his first petition pursuant to 28 U.S.C. § 2255. Doc #: 147. Walker later withdrew the petition, and Judge Bell dismissed it accordingly without prejudice to Walker's filing a later § 2255 petition. Doc #: 157. On April 21, 1997, Walker filed a second § 2255 petition. Doc #: 171. The case was reassigned to the undersigned Judge on September 8, 1998, and on December 8, 1998, the Court denied Walker's second § 2255 petition. Doc ##: 188, 193.

On June 23, 2016, Walker filed the instant § 2255 petition, which he subsequently amended. Doc ##: 205, 209, 212. In relevant part, Walker argued that, in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), he no longer qualifies as a career offender. On July 29 and August 24, 2016, the Court transferred the instant § 2255 petition (and amendments) to the Sixth Circuit as a motion for authorization to file a second or successive § 2255 motion. Doc #: 211, 213, 214. The Sixth Circuit granted the motion for authorization, observing, "[T]here is at least a 'fair-minded argument that *Johnson* requires the invalidation' of the career-offender guideline's residual clause in cases on collateral review. And Walker has made a sufficient prima facie showing that he may be entitled to relief from his career-offender designation based on *Johnson*."[1] Appeal Order 2, Doc #: 218. The Sixth Circuit also noted that "[w]hether *Johnson* applies to the Sentencing Guidelines, and if so whether it applies retroactively, will be decided by the Supreme Court next term. *See Beckles v. United States*, 136 S. Ct. 2510 (2016) (granting

---

[1] To the extent Walker makes arguments related to drug abuse convictions, amendments to the sentencing guidelines, and other matters outside the scope of the Sixth Circuit's specific authorization regarding "the career-offender guideline's residual clause," the Court disregards these arguments. *See, e.g.*, Reply, Doc #: 231.

certiorari). . . . The district court is instructed to hold the case in abeyance pending the decision in *Beckles*." *Id.*

Accordingly, the Court stayed the case until the Supreme Court decided *Beckles v. United States*, in March 2017. 137 S. Ct. 886, 892–94 (2017) (holding that the advisory Sentencing Guidelines are not subject to vagueness challenges under the Due Process Clause). The Court then directed Walker to show cause why the instant § 2255 petition should not be summarily denied pursuant to *Beckles*. Order, Doc #: 222. In response, Walker filed a Motion Showing Cause for Relief, Doc #: 223, and on May 9, 2017, the Court held that Walker had sufficiently shown cause because *Beckles* did not clearly foreclose his argument. Order 3, Doc #: 224. The Court scheduled briefing of the instant § 2255 petition, and this Order follows.

Subsequent to the instant § 2255 petition, Walker has twice sought second or successive § 2255 relief—once in this Court and once in the Sixth Circuit—but authorization for each was denied by the Sixth Circuit. Appeal Orders, Doc ##: 229, 230. Neither of these motions is addressed here.

**II. Legal Standard**

Pursuant to 28 U.S.C. § 2255, federal prisoners may "petition their sentencing court to correct or invalidate sentences imposed upon them provided that they are 'in custody under a sentence of a court established by Act of Congress' and provided that they make their petitions prior to the expiration of a one-year statute of limitations." *Ospina v. United States*, 386 F.3d 750, 752 (6th Cir. 2004) (quoting § 2255). A federal district court may grant relief to a prisoner in custody under a sentence imposed by that court "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was

without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." § 2255(a). "To succeed on a § 2255 motion, a prisoner in custody must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *McPhearson v. United States*, 675 F.3d 553, 558–59 (6th Cir. 2012) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)).

The allegations of a pro se petition must be construed in the petitioner's favor, and the petitioner's pleadings are held to a less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

## III. Discussion

The Sixth Circuit's instructions upon sending Walker's instant § 2255 petition to this Court require the Court address two questions. First, does *Johnson* invalidate the career-offender guidelines on collateral review? Second, if so, is Walker entitled to relief?

### A. Does *Johnson* Invalidate the Mandatory Guidelines?

The Government argues that *Johnson* does not apply to the Guidelines. Gov't Opp. 8. Alternatively even if it were to so apply, it does not apply retroactively. *Id.* The Court disagrees.

#### 1. *Johnson* and Subsequent Cases

In 2015, the Supreme Court held that imposing an increased sentence under the Armed Career Criminal Act's residual clause—which provides that a felony that "involves conduct that presents a serious potential risk of physical injury to another" should be treated as a "violent felony" for purposes of sentence enhancement—is unconstitutional. *Johnson v. United States*,

-4-

135 S. Ct. 2551, 2555, 2557 (2015). Consequent to *Johnson*, there has been substantial litigation addressing whether *Johnson* applies retroactively on collateral review and whether *Johnson* applies to the Sentencing Guidelines.

In late 2015, The Sixth Circuit answered the first question affirmatively, holding that *Johnson* had established a new substantive rule of constitutional law that applied retroactively to ACCA claims. *In re Watkins*, 810 F.3d 375, 380 (6th Cir. 2015). The Supreme Court, in early 2016, reached the same conclusion. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016) ("Johnson announced a substantive rule that has retroactive effect in cases on collateral review."). Thus, the first question is now clearly resolved: *Johnson* is retroactive.

The second question, regarding application of *Johnson* to the guidelines, has trodden a rockier path. The Sixth Circuit addressed the second question in mid-2016:

> After *Johnson*, no one disputes that the identical language of the Guidelines' residual clause implicates the same constitutional concerns as the ACCA's residual clause. In the words of the Tenth Circuit, "[g]iven our reliance on the ACCA for guidance in interpreting § 4B1.2, it stretches credulity to say that we could apply the residual clause of the Guidelines in a way that is constitutional, when courts cannot do so in the context of the ACCA." *Madrid*, 805 F.3d at 1211. Our reading of the current state of the law as established by the Supreme Court compels our holding that the rationale of *Johnson* applies equally to the residual clause of the Guidelines. Accordingly, we hold that the residual clause of U.S.S.G. § 4B1.2(a) is unconstitutionally vague.

*United States v. Pawlak*, 822 F.3d 902, 911 (6th Cir. 2016). The Supreme Court disagreed at least in part, however, and in early 2017 held that *Johnson* does not apply to the advisory Sentencing Guidelines:

> Unlike the ACCA, however, the advisory Guidelines do not fix the permissible range of sentences. To the contrary, they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the

-5-

> statutory range. . . .
> Because they merely guide the district courts' discretion, the Guidelines are not amenable to a vagueness challenge. . . .
> The Guidelines . . . do not regulate the public by prohibiting any conduct or by "establishing minimum and maximum penalties for [any] crime." Rather, the Guidelines advise sentencing courts how to exercise their discretion within the bounds established by Congress.

*Beckles v. United States*, 137 S. Ct. 886, 892, 894, 896 (2017) (final alteration in original) (citation omitted). *Beckles*, however, by its own terms does not apply to sentences imposed prior to *United States v. Booker*, 543 U.S. 220 (2005), in which the Supreme Court rendered the formerly-mandatory Sentencing Guidelines "effectively advisory." *Beckles*, 137 S. Ct. at 889; *accord Beckles*, 137 S. Ct. at 903 n.4 (Ginsburg, J., concurring) (citations omitted) ("The Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in *United States v. Booker*—that is, during the period in which the Guidelines did 'fix the permissible range of sentences'—may mount vagueness attacks on their sentences. That question is not presented by this case and I, like the majority, take no position on its appropriate resolution.").

This narrow question left open by *Beckles*—whether *Johnson* applies to pre-*Booker* mandatory Guidelines sentences—has not been ruled on by the Sixth Circuit Court of Appeals or any district court within the circuit post-*Beckles*. *But see Price v. United States*, No. 16-CV-12623, 2017 WL 2666114, at *2 (E.D. Mich. June 21, 2017) ("[T]he Court is persuaded that *Beckles* may not control in this instance because its language was tailored to the advisory nature of the Sentencing Guidelines, post-*Booker*."); *United States v. Tunstall*, No. 3:00 CR 050, 2017 WL 2619336 (S.D. Ohio June 16, 2017) (recommending, after *Beckles*, a

-6-

pre-*Booker* Guidelines sentence be vacated on the basis of *Johnson*).

### 2. Pre-Booker Guideliness

Because Walker was sentenced in 1993, well before *Booker* was decided in 2005, the Court must now address this narrow question and decide whether *Beckles* bars a due process challenge to a prison sentence imposed under the Career Offender provisions of the *mandatory* Sentencing Guidelines.

District courts are divided in their determinations, post-*Beckles*, about whether *Johnson* applies retroactively to pre-Booker Guidelines sentences.

For example, in *Reid v. United States*, a Massachusetts district judge discussed at some length the holding and implications of *Beckles*, drawing particular attention to the Supreme Court's heavy reliance on *Booker*:

> Justice Thomas's majority opinion in *Beckles* could easily have made clear that the Court's decision embraced both sentences before and sentences after *Booker*, if that was its intent. Instead, his argument is emphatically the opposite. *Beckles* repeatedly and explicitly notes that it applies only to the advisory sentencing regime commencing after the *Booker* decision in 2005. The sea change in the federal law of sentencing precipitated by *Booker* is the heart of Justice Thomas's analysis.

No. 03-CR-30031-MAP, 2017 WL 2221188, at *3 (D. Mass. May 18, 2017). The court ultimately concluded, "*Beckles* does not apply to pre-Booker sentences imposed under the mandatory Sentencing Guidelines. The Supreme Court's *Johnson* precedents make clear now that the court's employment of the Career Offender provisions of the Guidelines at the 2004 sentencing violated the Due Process Clause of the Fifth Amendment." *Id.* at *5 (noting also "The bulk of district court decisions handed down in the short time since *Beckles* have recognized the distinction between pre- and post–*Booker* sentences, at least theoretically and mainly in *dicta*.").

-7-

In contrast, in *Cross v. United States*, a Wisconsin district judge relied heavily on pre-*Beckles* Seventh Circuit case law and reached the opposite conclusion. No. 00 CR 36 RTR, 2017 WL 2345592, at *4 (E.D. Wis. May 30, 2017).

> For this Court's purposes, it is enough to find that because *Hurlburt* has been abrogated on the very issues upon which it abrogated *Tichenor* and *Brierton*, those prior cases have been revived. . . .
> In *Brierton*, the Court of Appeals squarely rejected a due-process vagueness challenge to the mandatory Guidelines. . . .
> In *Tichenor*, the Seventh Circuit extended Brierton to fend off a vagueness attack on the post–Booker, advisory Guidelines. . . .
> Then came *Hurlburt*, in which the Seventh Circuit held that *Tichenor* must be overruled. . . .
> Against this backdrop, the Court is obliged to conclude that it is bound not by *Hurlburt* but by the intervening authority of *Beckles*. If the Seventh Circuit can tread a middle way through the analytical minefield left in the wake of these cases, it is welcome to do so.

*Id.* at *3–*5. The court concluded, "The Court is bound to follow controlling Supreme Court and Seventh Circuit precedent in this case, and that authority dictates that vagueness challenges may not be raised against the pre–Booker, mandatory Guidelines." *Id.* at *8.

Both the Wisconsin court's and the Massachusetts's court's analyses and conclusions bear evaluation and consideration, but upon review it is the conclusion of this Court that the case law in the Sixth Circuit is less of an "analytical minefield." The Sixth Circuit, in *Pawlak*, explicitly overruled its own standing precedent and held, "Our reading of the current state of the law as established by the Supreme Court compels our holding that the rationale of *Johnson* applies equally to the residual clause of the Guidelines. Accordingly, we hold that the residual clause of U.S.S.G. § 4B1.2(a) is unconstitutionally vague." 822 F.3d at 911. In *Beckles*, the Supreme Court subsequently held "that the advisory Guidelines are not subject to vagueness challenges under the Due Process Clause." 137 S. Ct. at 890. To the extent *Beckles* is

-8-

inconsistent with *Pawlak*, *Beckles* obviously controls. However, to the extent that *Beckles* does not contradict *Pawlak*, this Court remains bound by *Pawlak*. As Magistrate Judge Merz recently discussed,

> In *United States v. Pawlak*, the Sixth Circuit applied *Johnson* to the Sentencing Guidelines and found them to be unconstitutionally vague. The Government argues "*Pawlak* was itself abrogated by the Supreme Court decision in *Beckles*." Not so. *Pawlak* is cited by Justice Thomas to demonstrate the conflict in the circuits which prompted the grant of certiorari in *Beckles* and by Justice Sotomayor to show that most circuits agreed the Sentencing Guidelines were subject to vagueness analysis. A colorable argument can be made that *Beckles* is inconsistent with *Pawlak*. Indeed, the undersigned originally accepted that argument. But there is certainly no explicit "abrogation" of *Pawlak* in *Beckles* because, as Justice Sotomayor points out in her opinion, mandatory Guidelines are different in their impact on sentencing judges than advisory Guidelines.

*Tunstall*, 2017 WL 2619336, at *6 (citations omitted). In short, until the Sixth Circuit or Supreme Court holds otherwise, this Court must accept both that the *advisory* Guidelines *are not* subject to challenges under *Johnson* and that the *mandatory* Guidelines *are* subject to challenges under *Johnson*.

The Government, here, asks the Court to instead follow *United States v. Matchett*, 802 F.3d 1185 (11th Cir. 2015), and related case law from the Eleventh Circuit, but *Matchett* has been squarely rejected by the Sixth Circuit. *Pawlak*, 822 F.3d at 910 ("After *Peugh*, it is our view that *Tichenor*'s reasoning is flawed and that the *Matchett* court was mistaken to rely on it."). The Sixth Circuit may wish to revisit this line of reasoning after *Beckles*, but it is not for this Court to do so here.

Regarding retroactivity, the Court again considers and adopts the reasoning expressed by Magistrate Judge Merz: "The Supreme Court itself has held *Johnson* enunciates a new

-9-

substantive rule applicable on collateral review. *Welch, supra*. The residual clause language in the Career Offender Guidelines and in the ACCA are textually identical. Because the pre-*Booker* mandatory Sentencing Guidelines are sufficiently statute-like to be subject to vagueness analysis, *Johnson* applies directly: there is no need to wait for further Supreme Court analysis explicitly extending *Johnson* to the pre-*Booker* Guidelines." *Tunstall*, 2017 WL 2619336, at *6. Quite so. *Welch* makes clear that *Johnson* has retroactive effect, and *Pawlak* requires (and *Beckles* permits) *Johnson* to affect the pre-*Booker* Guidelines.

Accordingly, Walker's sentence is subject to reconsideration pursuant to *Johnson*.

**B. Walker's Predicate Offenses**

In transferring the instant § 2255 Petition, the Sixth Circuit said, "Walker has made a sufficient prima facie showing that he may be entitled to relief from his career-offender designation based on *Johnson*." Appeal Order 2. The Government, in response, has made no argument to the contrary.

Moreover, in *United States v. Sanders*, the Sixth Circuit Court of Appeals held that the Ohio aggravated robbery statute in effect when Walker was convicted was a violent crime under now-defunct the residual clause. 470 F.3d 616, 621 (6th Cir. 2006) ("We . . . find that aggravated robbery under Ohio law 'involves conduct that presents a serious potential risk of physical injury to another.'"); *see United States v. Rodriguez*, 664 F.3d 1032, 1038 (6th Cir. 2011) ("The residual clause is pertinent only if the crime in question is not enumerated under the guideline and the crime does not have as an element the use, attempted use, or threatened use of force."). Thus, the 1974 version of the Ohio aggravated robbery statute no longer qualifies as a crime of violence, post-*Johnson*.

Accordingly, the Court finds that Walker no longer qualifies as a career offender on the basis of his two 1975 convictions for crimes of violence and is entitled to resentencing.

**IV. Conclusion**

For the reasons discussed above, Walker's § 2255 Petition, Doc ##: 205, 209, is GRANTED. Reginald K. Walker's sentence is VACATED. A new sentencing hearing is set for Tuesday, October 17, 2017, at 11:00 a.m. in Courtroom 18B before Judge Dan Aaron Polster.

The Clerk is directed to appoint Walker counsel for the purpose of sentencing.

This matter is referred to Probation for preparation of an updated Presentence Investigation Report.

IT IS SO ORDERED.

*/s/ Dan A. Polster     July 18, 2017*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**